**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 13-20044-CR-UNGARO**
**CASE NO. 03-20574-CR-UNGARO**

**UNITED STATES OF AMERICA**

vs.

**OMAR ALEJANDRO VANEGAS LORA,**
  a/k/a "Paco"

  **Defendant.**
_____/

**UNITED STATES' RESPONSE IN OPPOSITION
TO THE DEFENDANT'S OBJECTIONS TO THE
PRE-SENTENCE INVESTIGATION REPORT**

The United States of America, through the undersigned Assistant United States Attorney, files this response in opposition to the objections to the Pre-sentence Investigation Report ("PSR") filed by the defendant, OMAR ALEJANDRO VANEGAS LORA, a/k/a "Paco". In support thereof, the United States submits the following memorandum.

**Defendant's Criminal History**

The defendant objects to the criminal history point assessed for his 2000 conviction under New York's Vehicle Traffic Law 1192.3, driving while intoxicated. Under U.S.S.G. §4A1.2(c), prior misdemeanor offenses are counted and assigned criminal history points unless they fall under one of two categories of exclusion. In one category are certain enumerated misdemeanors that are counted or scored only if they resulted in a sentence of probation of more than one year, or at least 30 days in prison, or involved a prior offense similar to the instant offense. In the other category, certain offenses are never counted toward a defendant's criminal history. One of the Commentaries

1

to §4A1.2, captioned "Application Note 5" specifically addresses the misdemeanor at issue here, driving while intoxicated. Whether the Court relies on the 2013 version or the 2011 version of Application Note 5 to U.S.S.G. §4A1.2(c), either one demands the same result: that the defendant's 2000 conviction for driving while intoxicated under New York Vehicle Traffic Law § 1192.3 is assigned a criminal history point under the Sentencing Guidelines.

The 2013 version of Application Note 5 states:

> convictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are always counted, without regard to how the offense is classified.

It then states that "Paragraphs (1) and (2) of § 4A1.2(c) do not apply," referring to the two categories of exceptions or exclusions.

The 2011 version of Application Note 5 states:

> convictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are counted. Such offenses are not minor traffic infractions within the meaning of §4A1.2(c).

The guidance provided by the Sentencing Commission under both the 2011 and the 2013 version of Application Note 5 is the same, that driving while intoxicated is a prior offense that is "counted" and receives criminal history points under the Guidelines.

A.  Application of the 2013 Sentencing Guidelines Does Not Violate the *Ex Post Facto* Clause of the United States Constitution.

The sentencing court must apply the Guidelines in effect at the time the sentencing hearing is held. 18 U.S.C. § 3553(a)(4)(A); United States v. Aviles, 518 F.3d 1228 (11th Cir. 2008). The defendant argues that a more lenient punishment would occur under the Guidelines version in effect on the date the offense was committed, and therefore the 2011 version of U.S.S.G. § 4A1.2 should apply. The defendant argues the offense committed here ended in August of 2012, before

2

Application Note 5 was amended and took effect on November 1, 2012. The defendant has pleaded guilty, however, to a drug trafficking conspiracy between January 2009 through the date of the indictment, January 25, 2013, which is after the change to Application Note 5 took effect.

Even assuming that the offense ended in August 2012 (which is the date of the most recent seizure by law enforcement of drugs imported into the United States by the defendant), the defendant's argument has a fundamental flaw. The defendant would not receive a more lenient punishment using the 2011 version of Application Note 5 to U.S.S.G. § 4A1.2, nor could the defendant say that he was not on notice that a conviction for driving while intoxicated would be "counted" under the Guidelines at the time he was committing the offense. The 2013 Guidelines added only the underlined language to Application Note 5 indicated here: "convictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are <u>always</u> counted, <u>without regard to how the offense is classified</u>." Counting the defendant's prior conviction for driving while intoxicated under the 2013 Sentencing Guidelines does not violate the *ex post facto* clause of the United States Constitution because the additional language in Application Note 5, a commentary to the Guideline provision, simply sought to clarify or reaffirm, not amend, the 2011 version of the Guidelines. Clarifying amendments to the Guidelines do not violate the *Ex Post Facto* Clause. See <u>United States v. Diaz</u>, 26 F.3d 1533, 1544 (11th Cir. 1994) (where the amendments to the Guidelines "do not overrule prior construction but instead serve to confirm our reading of the Guideline section, ex post facto concerns are not implicated").

The 2011 version of Application Note 5 stated that "convictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are counted. Such offenses are not minor traffic infractions within the meaning of § 4A1.2(c)." That language appeared

3

to be unambiguous before the Second Circuit's decision in United States v. Potes-Castillo, 638 F.3d 106 (2d Cir. 2011), discussed below. As discussed by the Sentencing Commission explaining Amendment 766 (the Nov. 2012 amendment to Application Note 5), the Commission added the language underlined above to Application Note 5 specifically to address any ambiguity caused by the Potes-Castillo decision, which was contrary to the law in other Circuits and the plain language of Application Note 5. Indeed, it was the Potes-Castillo decision that inserted ambiguity into the plain language of Application Note 5. The Commission left no room for ambiguity when it reaffirmed under Application Note 5 that driving while intoxicated offenses are not merely to be "counted", they are to be "always counted" under the Sentencing Guidelines.

B. The Second Circuit's Decision in United States v. Potes-Castillo Does Not Apply to the Defendant's Prior Conviction for Driving While Intoxicated.

The defendant wants to rely on the Second Circuit's decision in United States v. Potes-Castillo United States v. Potes-Castillo, 638 F.3d 106 (2nd Cir. 2011), to argue that the defendant's conviction for driving while intoxicated was similar to "careless or reckless driving," and because the defendant was not sentenced to more than one year of probation or 30 days or more of prison time, this conviction would not count as a prior conviction under § 4A1.2(c)(1).

In Potes-Castillo, the Second Circuit addressed the question whether the appellant's conviction under New York Vehicle and Traffic Law § 1192.1, driving while ability impaired by alcohol, should receive a criminal history point under § 4A1.2(c). Under Section 1192 of New York Vehicle and Traffic Law, the provision analyzed in Potes-Castillo (1192.1), driving while impaired, is a traffic infraction. By contrast, the provision of the law under which the defendant was convicted (1192.3), driving while intoxicated, is a misdemeanor. The Notes to Section 1192 state that "driving while impaired is a lesser charge of driving while intoxicated." The Second Circuit in Potes-Castillo

4

noted this fact, stating that the offense of driving while ability impaired "is treated as a 'traffic infraction' by the state . . . ." 638 F.3d at 108.

Notwithstanding that driving while impaired (1192.1) is a lesser offense than driving while intoxicated (1192.3) in New York, the 2011 version of Application Note 5 to § 4A1.2(c) should have led to the same result: that it is an offense similar to driving while intoxicated or driving under the influence "by whatever name it is known," and that it "is not a minor traffic infraction," and therefore should be counted under the Guidelines. The Second Circuit in Potes-Castillo, however, found ambiguity in the language of the Guidelines where there did not appear to be any, and concluded that driving while impaired counts under the Guidelines – unless an exception applies. 638 F.3d at 111. Upon remand to the district court, that court found that driving while impaired was subject to an exception, and that because it was "not categorically more serious than reckless driving," it rendered it similar to reckless driving. United States v. Gonzalez-Rivera, 2011 WL 4916395 (SDNY Oct. 17, 2011) (unpublished disposition). Under the Sentencing Guidelines, reckless driving is counted for criminal history purposes only if the defendant is sentenced to a term of probation exceeding one year, or 30 days or more in prison, or it is a prior offense similar to the offense of conviction in the case. U.S.S.G. §4A1.2(c)(1). Thus, the court concluded that the offense of driving while impaired would not receive any criminal history points, as the defendant was only imposed a fine and the offense was not similar to the current offense of conviction. Id. at *5. Notwithstanding the flawed analysis of the Second Circuit, that court did not analyze the offense at issue here – driving while intoxicated – an offense identified as a misdemeanor under New York law, not a traffic infraction, and considered a more serious offense than driving while impaired under New York law.

5

The Second Circuit's decision interpreting the offense of driving while impaired under §4A1.2(c) was not the law followed by any other Circuit, including the Eleventh Circuit. This Court is not bound by any decision of the Second Circuit or of the district court from the Southern District of New York on matters of federal law. The application of §4A1.2(c) of the federal sentencing guidelines to any prior offense is a matter of federal law within the purview of the Eleventh Circuit, the governing Circuit for this Court. In United States v. Wilson, 901 F.2d 1000, 1002 (11th Cir. 1990), the Eleven Circuit rejected the defendant's challenge to the criminal history point assessed for his prior DUI, and reaffirmed the fact that "DUI convictions however, are not deemed minor traffic infractions within the meaning of U.S.S.G. §4A1.2(c)." In United States v. Schenk, 2012 WL 4093869 (N.D. Fla. Aug. 14, 2012), the defendant challenged the criminal history point he received for a prior driving under the influence conviction in which the defendant was sentenced to a term of one year probation. The Court rejected the defendant's argument, finding that driving under the influence is not an offense that is excluded under the Guidelines, Section 4A1.2(c), and is therefore counted in computing the criminal history points. Id. at *10.

Other Circuits that have analyzed DUI-type offenses in the context of scoring a defendant's criminal history have all concluded that these offenses are properly counted under U.S.S.G. § 4A1.2(c). See United States v. Pando, 545 F.3d 682, 683-85 (8th Cir. 2008) (holding that prior conviction for driving while ability impaired counted toward the defendant's criminal history, rejecting the argument that the offense was similar to careless or reckless driving); United States v. Thorton, 444 F.3d 1163, 1165-67 (9th Cir. 2006); United States v. LeBlanc, 45 F.3d 192, 195 (7th Cir. 1995); United States v. Deigert, 916 F.2d 916, 918 (4th Cir. 1990).

For the reasons stated above, the defendant's objection to the criminal history point assessed for his 2000 prior conviction for driving while intoxicated should be overruled.

C.    The Defendant's Criminal History Is Not Being Overstated

The defendant has two criminal history points for his two prior convictions in 1996 and 2000. The defendant is therefore not safety-valve eligible in the 2003 case, and because the two cases are grouped, he is not safety-valve eligible in the 2013 case either. Had the two cases not been grouped or consolidated, the defendant would have three criminal history points instead. The defendant would be assessed three criminal history points upon his conviction in the 2003 case, as that case would count as a prior felony conviction when scoring the 2013 case and would have prevented him from being safety-valve eligible in the 2013 case.

**Considerations for Sentencing**

More importantly, this issue of scoring DUI-type offenses is a distraction from the main issue to be addressed at the defendant's sentencing. That issue of course is what is a just and appropriate sentence under the Section 3553(a) factors, one that reflects the seriousness of the offense, provides just punishment for these offenses, promotes respect for the law, affords some measure of deterrence against future criminal activity, and protects the public from future crimes by the defendant. The question is what is a fair and just sentence that is not greater than necessary, but is one that avoids disparity in sentencing and that adequately addresses the ongoing pattern of criminal conduct that these two cases represent and that the defendant engaged in for more than a decade. The government believes the only fair sentence is one at the top of the guideline range.

The defendant was indicted in 2003 as part of a heroin and cocaine drug trafficking conspiracy. At that time, the defendant was already a source of heroin and cocaine to his co-

conspirators indicted in the related case, <u>United States v. Juan Ubaldo De La Rosa, et al.</u>, 03-20573-Cr-Martinez. Starting no later than 2001, the defendant was importing loads of heroin and cocaine concealed inside of King Ocean Services cargo containers that arrived at Port Everglades, at first via cargo ships that docked in Guatemala, and later via Curacao. The defendant was living in the United States, receiving the loads of narcotics from co-conspirators working at Port Everglades, such as David Rodriguez and others, and distributing the narcotics here in South Florida to Juan Ubaldo and others, and in New York, where the defendant lived and had other drug trafficking contacts. Once Ubaldo and several people working for Ubaldo were indicted and arrested following a November 2002 seizure of a load heroin that had been supplied by the defendant, the defendant returned to Colombia.

Despite the arrest of the defendant's associates, once back in Colombia, the defendant continued the same pattern of drug trafficking activity. The route changed, some of the players changed, but the same criminal conduct continued. The defendant coordinated the importation of drugs into South Florida with port workers in Curacao, who loaded the narcotics onto cargo containers there that were destined for Port Everglades. David Rodriguez, who left his port job for a more lucrative life as a full-time drug trafficker, received the loads from the defendant and distributed them to local drug traffickers. Cousin Edinson Ahumada became the defendant's U.S. representative, traveling here as needed. In May of 2010, a load of cocaine was seized from a container that had left Port Everglades aboard a tractor trailer. Two of the defendant's co-conspirators were arrested and prosecuted by the State of Florida in connection with that seizure. The following day, law enforcement seized approximately $340,000 from Ahumada. This was money that Ahumada received from co-conspirator Joaquin Goenaga following the successful

8

importation of a load -- a companion load that law enforcement had not seized the previous day. Ahumada promptly returned to Colombia. Once again, despite having several associates arrested or on the run, both the defendant and Ahumada continued the same drug trafficking activities with other players.

In October of 2011, law enforcement arrested nine King Ocean Services employees who worked at Port Everglades and several others, including Goenaga, on drug importation and drug trafficking charges. Most of these port workers were the latest group of people to work with the defendant to import drugs into the United States. By the fall of 2011, the defendant had been elected mayor of Tenerife, a town in Colombia near Barranquilla, another port from which the defendant sent drugs to the United States over the years. In 2012, the defendant was a public figure, a mayor, and several more of his U.S. drug associates had been arrested or were on the run. But that still was not the end of the drug-trafficking road for this defendant. In 2012, a confidential source working with federal agents traveled to Barranquilla and met with the defendant and with Ahumada to restart their drug importation operations, which of course they did. It was this operation in 2012 that finally allowed law enforcement to identify as the defendant the person previously known to law enforcement as "Paco". The defendant sent a test load through Port Everglades and then restarted the business in earnest, sending another 12 kilograms of cocaine which law enforcement seized in August of 2012. The same story repeated itself and another King Ocean Services employee at Port Everglades was arrested.

The defendant has worked in the drug business, importing drugs into South Florida for many years. Many people working with, or for, the defendant were arrested and convicted for their participation in these crimes over the years. Many people far down the distribution ladder, such as

9

port workers who actually worked for a living, fell to the temptation of easy money that the drug trade provides. Many are serving significant jail sentences. As far as this investigation goes, it has reached the person at top of the pyramid, the Mayor. The government respectfully asks the Court to impose a sentence that provides just punishment for the defendant's use and abuse over the years of cargo ships and the port of entry that is Port Everglades, and for the hundreds of kilograms of cocaine and many kilograms of heroin that this defendant is responsible for introducing into our community, the Southern District of Florida.

>Respectfully submitted,
>
>WIFREDO A. FERRER
>UNITED STATES ATTORNEY
>
>By: s/Aimee Jimenez
>Aimee C. Jimenez
>Assistant United States Attorney
>Court No. A5500795
>99 Northeast 4th Street
>Miami, Florida 33132-2111
>Tel: (305) 961-9028
>Fax: (305) 530-7976
>Email: aimee.jimenez@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 27, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

>*s/Aimee Jimenez*
>Aimee C. Jimenez
>Assistant United States Attorney